Dissenting opinion by Associate Judge Easterly at page 855.
Glickman, Associate Judge:
Appellant Brian Williams is serving a sentence of 62 years to life in prison for two murders and other offenses committed when he was 17 years of age. He appeals from the denial of a motion collaterally challenging the constitutionality of his conviction and sentence pursuant to D.C. Code § 23-110 (2012 Repl.) Appellant contends his sentence is "de facto" life without parole ("LWOP") and therefore unconstitutional and subject to correction under the Supreme Court's decisions in Miller v. Alabama[1] and Montgomery v. Louisiana .[2] Miller held that "mandatory life [imprisonment] without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments."[3] In so holding, as Montgomery subsequently clarified, Miller "bar[red] life without parole ... for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility."[4] All other offenders who were juveniles at the time of their crimes are entitled to "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."[5] Montgomery further held that this is a substantive rule of constitutional law *840 that applies retroactively to prisoners whose sentences were final when Miller was decided.[6] Such prisoners, the Court held, "must be given the opportunity to show their crime did not reflect irreparable corruption; and, if it did not, their hope for some years of life outside prison walls must be restored."[7] Accordingly, because the sentencing court in the present case did not find appellant to be permanently incorrigible, he asks us to vacate his sentence and remand his case for resentencing.
The United States concedes that an aggregate term-of-years sentence for multiple offenses qualifies as "de facto" LWOP for purposes of Miller and Montgomery if it precludes parole consideration for a period of time clearly exceeding the defendant's natural life expectancy.[8] The government argues, however, that the holdings of Miller and Montgomery are inapplicable to this case because they apply only to mandatory LWOP sentences (i.e., only when the sentencing court has no discretion to sentence the offender to less than LWOP or its equivalent), and not to discretionary LWOP sentences such as the sentence appellant received. There is a conflict in the lower courts over this issue, and on March 18, 2019, the Supreme Court granted the petition for certiorari in Mathena v. Malvo to settle it.[9] As we explain in this opinion, our disposition of this appeal makes it unnecessary to await the Supreme Court's ultimate decision in Malvo . We can assume, without deciding, that the Eighth Amendment principles enunciated in Miller and Montgomery apply regardless of whether the LWOP sentence is "mandatory" or "discretionary."
The government also disputes appellant's claim that his aggregate sentence rendered him ineligible for parole for as long as, or longer than, his life expectancy. This is a factual question that the record before us does not resolve, though the period of appellant's ineligibility for parole does appear to be close to his expected life span.[10] For purposes of this appeal, we may assume, without deciding, that appellant's sentence as imposed was "de facto" LWOP.
The government's primary argument on appeal is that appellant is not entitled to the resentencing relief he requests, even assuming the applicability of Miller and Montgomery , because the Council of the District of Columbia has legislatively remedied the claimed Eighth Amendment *841 infirmity in his sentence by making him eligible for release from prison well before his current parole-eligibility date. We agree with the government on this latter point.
Montgomery held that Miller violations may be remedied legislatively by allowing juvenile offenders who received LWOP sentences "to be considered for parole, rather than by resentencing them."[11] Although the District prospectively abolished parole almost two decades ago, the Council adopted a comparable remedy for unconstitutional LWOP sentences in the Incarceration Reduction Amendment Act of 2016 (the "IRAA").[12] The IRAA permits a defendant who has served at least 20 years of imprisonment for an offense committed before his 18th birthday to apply to the court (instead of to a parole board) for relief from his sentence in light of his lesser culpability as a juvenile and his maturation and rehabilitation in prison. Because we conclude that the IRAA provides appellant with the requisite "meaningful opportunity" to obtain release from prison well before the end of his natural life expectancy based on his maturation and rehabilitation, we deny his request for a resentencing.
I.
On March 11, 1990, appellant and three other men armed themselves with pistols and a shotgun and carried out a plan to rob two cocaine dealers. During the robbery, the two unarmed dealers were shot and killed while lying face down on the floor, and the wife of one of the victims was assaulted. The conspirators got away with 17 ounces of cocaine, which they divided up among themselves. When appellant was arrested, he told police he was at home with his girlfriend on the night of the murders; he later urged his girlfriend to lie to the grand jury in support of that alibi.
At appellant's trial in January 1992, the jury returned a verdict of guilty on fourteen counts, including multiple counts of first-degree felony murder while armed. This court affirmed appellant's convictions in 1995 and remanded the case for vacatur of those convictions that were subject to merger.[13] This was done, and on July 28, 1995, the trial judge sentenced appellant to an aggregate sentence of 62 years to life in prison.[14] Appellant was seventeen years old when he committed the offenses. According to the Bureau of Prisons, he will not be eligible for parole until 2048, when he will be 75 years old.
*842 On April 6, 2015, appellant filed a pro se motion presenting the claim that his sentence was unconstitutional under Miller because it was equivalent to a sentence of life without parole.[15] The government opposed the motion. On May 9, 2016, the trial judge ruled that appellant was not entitled to relief. The judge rejected appellant's Eighth Amendment claim on the grounds that he had not sentenced appellant under a statute mandating a life sentence without the possibility of parole and that he had taken appellant's youth into account.[16] Appellant timely noticed this appeal.[17]
II.
The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."[18] In the years since appellant was sentenced, the Supreme Court issued a series of four decisions applying this prohibition to the sentencing of offenders who were juveniles when their crimes were committed.
In the first of these decisions, Roper v. Simmons ,[19] the Court held that the Cruel and Unusual Punishments Clause of the Eighth Amendment prohibits imposition of the death penalty on an offender who was younger than 18 when he committed a capital crime. In so ruling, the Court set forth the premises for concluding that the most severe punishments are, or may be, disproportionately harsh when applied to juveniles because of their lessened culpability and greater prospects for maturation and rehabilitation. The Court identified "[t]hree general differences between juveniles under 18 and adults demonstrat[ing] that juvenile offenders cannot with reliability be classified among the worst offenders."[20] First, as compared to adults, juveniles have "a lack of maturity and an underdeveloped sense of responsibility," causing them to act more impulsively and recklessly; second, juveniles are more vulnerable or susceptible to outside pressures and negative influences, "including peer pressure"; and third, they are more amenable to correction and reformation because their characters are "not as well formed" and their personality traits are "more transitory, less fixed."[21] While these characteristics may not be true of every juvenile under 18, the Court recognized *843 that "[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption."[22]
In the three decisions following Roper , the Court turned from the death penalty to consider the constitutionality of sentencing juveniles to what it called "the second most severe penalty permitted by law,"[23] life imprisonment without parole. The Court recognized this to be "especially harsh punishment for a juvenile [who] will on average serve more years and a greater percentage of his life in prison than an adult offender."[24] It came to the conclusion in these cases that LWOP sentences are almost always disproportionately severe and constitutionally impermissible for offenders under 18 years of age because of their diminished culpability and greater receptivity to rehabilitation, and the dubiousness of making at the time of sentencing an "irrevocable judgment" that a juvenile offender is "incorrigible" and "forever will be a danger to society."[25]
In Graham , the first case in the LWOP trilogy, the Court held that for any "juvenile offender who did not commit homicide[,] the Eighth Amendment forbids the sentence of life without parole" without exception.[26] When a juvenile is sentenced to life for a non-homicide crime, the State must give him or her what the Court called a "meaningful" and "realistic opportunity to obtain release before the end of that term."[27] Two years later, the Court declared in Miller that " Graham 's reasoning implicates any life-without-parole sentence imposed on a juvenile, even as its categorical bar relates only to nonhomicide offenses."[28] Although Graham had not absolutely proscribed LWOP sentences for juvenile homicide offenders, Miller held that the Eighth Amendment forbids a sentencing scheme under which LWOP is mandatory for any class of juvenile offenders, because "[b]y making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment."[29] The Court declared that before imposing life without parole on a juvenile offender in any homicide case, the sentencer is required "to take into account how children are different, and how those differences counsel *844 against irrevocably sentencing them to a lifetime in prison."[30]
In the third case, Montgomery , the Court clarified that " Miller ... did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole.... Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects 'unfortunate yet transient immaturity.' "[31] Montgomery described Miller 's retroactive "substantive holding" as being "that life without parole is an excessive sentence for children whose crimes reflect transient immaturity."[32] Miller thus "bar[red] life without parole ... for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility."[33]
In line with the government's concession in this case, numerous courts have understood Miller (and Graham ) to apply not only to sentences that literally impose imprisonment for life without the possibility of parole, but also to lengthy term-of-years sentences (for one offense or for multiple offenses in the aggregate) that amount to "de facto" life without parole because they foreclose the defendant's release from prison for all or virtually all of his expected remaining life span.[34] We agree with that understanding.
Although Miller addressed only mandatory LWOP sentencing schemes, many courts have read it, especially after Montgomery , as equally applicable to discretionary LWOP sentences.[35] We apprehend that the recent grant of certiorari in Malvo *845 means the Supreme Court is likely to clarify whether the constitutional principles articulated in Miller and Montgomery apply to discretionary as well as mandatory LWOP sentences imposed on juvenile homicide offenders. For present purposes, we may assume arguendo an affirmative answer to that question; the answer makes no difference to our analysis and disposition of the present appeal.
Importantly, the Supreme Court's three LWOP decisions do not proscribe, and impose no restrictions on, sentencing juvenile offenders to "life with the possibility of parole."[36] The Court emphasized that the Eighth Amendment does not require States "to guarantee eventual freedom" to juvenile offenders who are ineligible for LWOP sentences.[37] The Eighth Amendment demands only that those offenders be afforded "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."[38] The corollary is that, consistent with the Constitution, "[t]hose prisoners who have shown an inability to reform will continue to serve life sentences."[39] Thus, providing a "meaningful" opportunity for reformed juvenile offenders to secure release from prison remedies the unconstitutionality of an LWOP sentence barred by Miller by turning it into a sentence that is constitutional because release is realistically possible after all.
The Court did not define what constitutes a "meaningful" opportunity to obtain *846 release; essentially the only guidance it provided on that score was to say that "prisoners like Montgomery [a juvenile homicide offender serving an LWOP sentence] must be given the opportunity to show their crime did not reflect irreparable corruption; and, if it did not, their hope for some years of life outside prison walls must be restored."[40]
The Court left it up to the States, "in the first instance, to explore the means and mechanisms for compliance" with this duty[41] and to "develop[ ] appropriate ways to enforce the constitutional restriction upon [their] execution of sentences."[42] It made clear in Montgomery that juvenile offenders serving unconstitutional LWOP sentences did not need to be resentenced to cure the Eighth Amendment violation in their sentences:
Giving Miller retroactive effect, moreover, does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them.... Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity - and who have since matured - will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment."[43 ]
As an example of a sufficient remedial alternative to resentencing, the Court cited a Wyoming statute making juvenile homicide offenders eligible for parole after 25 years.[44]
The Council of the District of Columbia responded to the constitutional imperatives declared in Graham , Miller , and Montgomery by passing the Incarceration Reduction Amendment Act of 2016 (the "IRAA").[45] The IRAA went into effect on April 4, 2017. It bans LWOP sentences and eliminates mandatory minimum prison terms for all offenders who were under 18 years of age when they committed their crimes.[46] In addition, the IRAA establishes a sentence review procedure intended to comply with the Supreme Court's LWOP decisions by ensuring that all juvenile offenders serving lengthy prison terms have a realistic, meaningful opportunity to obtain release based on their diminished culpability and their maturation and rehabilitation.
*847 The sentence review procedure is set forth in Section 306 (b) of the IRAA.[47] The Council modeled it on legislation enacted in Florida and Delaware and under consideration in Congress.[48] It provides that "[n]otwithstanding any other provision of law," the sentencing "court may reduce a term of imprisonment imposed upon a defendant for an offense committed before the defendant's 18th birthday" if the defendant "has served at least 20 years in prison" without having become eligible for release on parole.[49] This relief is available regardless of whether the imposed period of imprisonment without parole violated the Eighth Amendment under Graham and Miller .[50]
A defendant may apply for such relief by motion and submit supporting affidavits and documentation, and the court is required to hold a hearing on the motion.[51] At the hearing, the defendant and his counsel "shall be given an opportunity to speak on the defendant's behalf" and may be permitted to introduce evidence.[52]
The IRAA allows the court to reduce the term of imprisonment if it finds that "the defendant is not a danger to the safety of any person or the community and that the interests of justice warrant a sentence modification."[53] This standard, in conjunction with the requirement that the defendant must have served at least 20 years of *848 his prison term, is essentially equivalent to the standard for granting parole.[54] The 20-year waiting period is consistent with the 25-year waiting period for parole eligibility that the Supreme Court deemed constitutionally acceptable in Montgomery .
In determining whether sentence modification is warranted, the court is required to consider "[t]he defendant's age at the time of the offense;" "[w]hether the defendant has "demonstrated maturity, rehabilitation, and a fitness to reenter society;" and "[t]he diminished culpability of juveniles as compared to that of adults, and the hallmark features of youth, including immaturity, impetuosity, and failure to appreciate risks and consequences, which counsel against sentencing them to a lifetime in prison[.]"[55] The statute goes on to identify a number of specific factors bearing on the defendant's maturation, rehabilitative progress and amenability to reform, that the court must consider, including:
(2) The nature of the offense and the history and characteristics of the defendant;
(3) Whether the defendant has substantially complied with the rules of the institution to which he or she has been confined and whether the defendant has completed any educational, vocational, or other program, where available;
* * *
(7) Any reports of physical, mental, or psychiatric examinations of the defendant conducted by licensed health care professionals;
(8) The defendant's family and community circumstances at the time of the offense, including any history of abuse, trauma, or involvement in the child welfare system;
(9) The extent of the defendant's role in the offense and whether and to what extent an adult was involved in the offense.[56 ]
The IRAA requires the court to issue a written opinion "stating the reasons for granting or denying the application[.]"[57] This requirement of a written opinion helps to ensure the effectiveness of appellate review, which is for abuse of discretion.[58] If the court grants the application, it shall proceed to resentence the defendant under the sentencing regime that originally governed his sentence.[59] If a defendant's initial motion for a reduced sentence is denied, the IRAA provides the defendant with two further opportunities to obtain release. The defendant may file a second sentence reduction motion after five years; if that motion too is denied, he may file a third such motion after another five years. If that third motion is denied as well, no further motions under the IRAA are permitted. [60]
*849 Although review under the IRAA is not denominated "resentencing," it would seem to equate to a resentencing in all but name. However we characterize it, the IRAA sentence review procedure provides a realistic, meaningful opportunity for all prisoners serving LWOP sentences for juvenile offenses to obtain release and "some years of life outside prison walls" based on demonstrated maturity and rehabilitation. For example, the court could render a prisoner in appellant's circumstances (one serving an indeterminate sentence) eligible for parole much earlier (or, indeed, immediately) by lowering the minimum terms imposed for each count of conviction and/or making his individual sentences run concurrently instead of consecutively; or the court could alter his sentence in various other ways and even reduce it to time served, effecting the prisoner's prompt release, based on its determination of his reformation and suitability for such relief. For prisoners serving determinate term-of-years sentences, the IRAA empowers the court to grant early release more directly by simply reducing the length of the prison term. The IRAA's provision of this opportunity for release does all the Supreme Court has said is necessary in its juvenile LWOP cases for such sentences to pass muster under the Eighth Amendment, for it was only the previous unavailability of such an opportunity that caused those sentences to contravene that Amendment. The IRAA thus furnishes a sufficient remedy for Miller violations. Because this remedy is available to appellant - in fact, we are informed that he already has applied in Superior Court for modification of his sentence pursuant to the IRAA - his § 23-110 claim is now moot. The sentence appellant is serving is now equivalent, for Eighth Amendment purposes, to a life sentence with parole eligibility - a sentence the Eighth Amendment permits.
Appellant and our dissenting colleague nonetheless assert that because the IRAA does not require parole consideration directly, it leaves the original, presumptively unconstitutional LWOP sentences "in place" and unaltered. E.g., post at 856, 857, 864-65, 868-69, 869, 869-70. Perhaps that is so as a purely formal matter, but it is not so in reality or from the perspective of satisfying the requirements of the Eighth Amendment. There is no constitutional magic in the word "parole." In reality, the IRAA fundamentally transformed every LWOP sentence imposed in Superior Court for crimes committed by juvenile offenders, by effectively converting each such sentence into one with multiple realistic and meaningful possibilities of release while the offender still has years of life left. What was presumptively unconstitutional in those sentences therefore was not left "in place"; it was superseded by a new procedure providing all that the Eighth Amendment requires.
Simply put, by enacting the IRAA, the Council legislatively modified what were life sentences without the possibility of parole, changing them all into life sentences with a constitutional equivalent of parole. While the judicial hearing contemplated by the IRAA is not identical in all respects to a parole hearing, it serves the same purpose and requires judges to do what appellant would have parole boards do: consider whether defendants ostensibly sentenced to life in prison for crimes committed as juveniles have earned back their liberty by demonstrating their capacity for reformation. The dissent objects that while parole provides the opportunity for outright release from prison to those found to deserve it, the IRAA only provides the *850 opportunity for a reduction of sentence to deserving prisoners. Post at 856, 864-66. But this is quibble; the distinction the dissent draws between release and sentence reduction is of no constitutional significance, for as explained earlier, sentence reduction is an effective means for the court to provide for release.
The dissent further objects that the IRAA judicial review procedure places the burden of proof on the defendant to show that he has reformed, rather than requiring the government to prove that his crime reflects permanent incorrigibility. Post at 867 n.22. This objection, which equally could be leveled against parole hearings, misapprehends what the Supreme Court held in Miller and Montgomery . Under those cases, a judicial prediction of permanent incorrigibility is necessary only to support the denial of any meaningful opportunity for release based on demonstrated maturation and rehabilitation. The IRAA, however, provides exactly that opportunity. Consequently, as Montgomery states, the burden is indeed on the prisoner to "demonstrate the truth of Miller 's central intuition - that children who commit even heinous crimes are capable of change."[61]
The Supreme Court has repeatedly emphasized that it is the opportunity for eventual release, not the actuality of eventual release, that the Eighth Amendment demands. Life sentences for juvenile offenders are not in themselves unconstitutional, nor do they require any finding of incorrigibility to be constitutional, so long as the requisite opportunity for release exists. The Constitution does not guarantee that juvenile offenders will be released eventually or require a finding of incorrigibility as a condition of withholding release from those who fail to reform.
Furthermore, the Supreme Court did not say, nor in our view did it imply, that a parole hearing is the only constitutionally acceptable remedial alternative to vacating and relitigating the sentence ab initio .[62] While in Montgomery the Supreme Court gave Wyoming's parole statute (allowing parole consideration after 25 years) as an example of an acceptable approach, the Court explicitly left it up to the States to devise appropriate procedures to vindicate the Eighth Amendment's requirements in this area.[63] If, as the Court held in Montgomery , the Eighth Amendment permits a State to remedy unconstitutional LWOP sentences by legislatively providing the opportunity for early release by a parole board, then surely the Eighth Amendment permits a State to remedy unconstitutional LWOP sentences by legislatively providing the opportunity for early release by a court. To reject the latter alternative simply because it is not denominated "parole" is to exalt form over substance *851 without any grounding in Eighth Amendment jurisprudence.
Other States have enacted judicial sentence review procedures similar to that in the IRAA to provide juvenile offenders receiving life or long term-of-years prison sentences with the meaningful opportunity to obtain release mandated by Graham and Miller .[64] For example, Fla. Stat. § 921.1402 allows an offender serving such a sentence to apply for judicial review after 25 years and requires the sentencing court to hold a hearing on the application to determine "whether the sentence should be modified" in light of the offender's demonstrated maturity and rehabilitation. The Florida Supreme Court held that this provision satisfies Miller 's requirement that juvenile offenders be given a meaningful opportunity for future release from incarceration.[65] In other words, the Court deemed the statutory provision of IRAA-type judicial review to be equivalent to the provision of parole review for purposes of complying with the Eighth Amendment as construed in Miller and Montgomery .[66]
In support of its counter-factual theme that the IRAA cannot remedy an unconstitutional LWOP sentence because it leaves that sentence unaltered, the dissent relies on, and largely echoes, a pre- Montgomery decision of the California Supreme Court, People v. Gutierrez .[67] In that case, the Court held that the potential for relief *852 under California's "recall and resentencing" statute[68] - a statute similar, though not identical, to the IRAA - was not an adequate remedy for an LWOP sentence imposed on a juvenile offender pursuant to a statute that established an unconstitutional presumption in favor of life without parole.[69] The rationale articulated in Gutierrez , like that of the dissent in this case, is undermined by Montgomery 's subsequent holding that Miller violations can be cured without resentencing by providing the offender with the opportunity for release from prison based on a showing of maturation and rehabilitation.[70] When the California Supreme Court addressed the recall and resentencing statute after Montgomery was decided, in In re Kirchner ,[71] it articulated a different rationale for concluding that the statutory remedy was insufficient to remedy a Miller violation. Specifically, the Court found the statute inadequate because, by its terms, it makes resentencing "unavailable to some juvenile offenders who are serving sentences that contravene Miller ," and it fails to "require consideration of all relevant evidence bearing on the Miller factors ... as part of the resentencing inquiry."[72] The IRAA differs from the California law; it is subject to neither of these defects.
Ultimately, even if a few other State courts have rejected their States' judicial review mechanisms as an alternative to resentencing juvenile offenders serving unconstitutional LWOP sentences, that is of little moment. In Montgomery , the Supreme Court held that resentencing is not the only acceptable means of remedying the Eighth Amendment violation, and that it suffices for a State to make consideration for release on parole meaningfully available to such offenders in lieu of resentencing them. The critical question before us, therefore, is how judicial review under *853 the IRAA compares with parole consideration. We think it compares quite favorably.
We certainly do not see that the judicial hearing required by the IRAA is inferior to a parole hearing from the defendant's point of view, or in terms of meeting the concerns expressed in Miller and Montgomery that the differences between children and adults be taken fully into account to avoid disproportionately harsh sentences for juvenile offenders. The IRAA judicial hearing is superior to a parole hearing in those respects, for one reason because the IRAA explicitly requires judges to give individualized consideration to the factors specific to juveniles that "counsel against sentencing them to a lifetime in prison."[73] In addition, the formal judicial hearing envisioned by the IRAA provides defendants significant procedural guarantees, in contrast to the "minimal" procedures that the Constitution requires in parole proceedings.[74] These include a fuller opportunity to present relevant evidence (and, by implication, to challenge the government's evidence) with the assistance of counsel,[75] and a written, structured decision by the judge that is subject to more stringent constitutional and statutory requirements and is more fully reviewable on appeal.[76]
*854 Appellant objects that the IRAA commits the motion for reduction of sentence to the judge's discretion "with no guidance to judges about how to weigh the enumerated factors."[77] Even if this were so, the Supreme Court did not suggest in Montgomery that the Eighth Amendment requires such precision to guide parole[78] or any other procedure for remedying a Miller violation. It is common for decisions of constitutional magnitude to be based on a judge's discretionary consideration of multiple factors without preordained weights assigned to them; many such decisions are not amenable to such advance fine-tuning, and sentence reduction in this context is surely one of them. The factors to be considered are too many and vary too greatly from individual to individual for any predetermined formula to govern their weighing and balancing, and rigid adherence to such a formula would run counter to the essence of the evaluation of each juvenile's unique characteristics, degree of culpability, and prospects for reformation required by the Eighth Amendment.
We reject appellant's assertions that judicial review in the IRAA context is therefore "illusory" and that "[a]s long as a judge holds an IRAA hearing, allows the defendant to present evidence, and issues a written order, the refusal to reduce a sentence that should never have been imposed will be, for all practical purposes, unreviewable."[79] The judge is obligated to accord the prisoner a fair hearing and to make findings and conclusions supported by the record with respect to the pertinent factors enumerated in the IRAA. Thus, the judicial exercise of discretion, in an IRAA proceeding as in other areas, is reviewable for compliance with constitutional and other legal requirements and for abuse under well-established standards of reasonableness;[80] it is far more amenable to review, we would add, than a parole board decision to deny parole. Although (as appellant points out) this court has observed that "[g]enerally, sentences within statutory limits are unreviewable aside from constitutional considerations,"[81] that observation has little bearing here, where not only are "constitutional considerations" and the Supreme Court's articulation of the relevant requirements of the Eighth Amendment at the forefront, but also the IRAA itself clearly sets forth the criteria that the court must consider.
Finally, appellant objects that the availability of IRAA relief evaporates after three unsuccessful tries, creating the possibility that a defendant whose sentence violated Miller would have to spend his entire life in prison even if he eventually might, on a fourth (or later) attempt, have been able to demonstrate that he is rehabilitated and deserving of release. Appellant *855 states that, in contrast, District of Columbia prisoners who are eligible for parole may be reconsidered for parole on an annual basis. That may be so, but as the government rejoins, when the Supreme Court said States could remedy Miller violations by permitting the defendant to be considered for parole, it did not describe what the parole scheme had to look like or imply that it needed to be as generous as the District's scheme in providing repeated opportunities for parole reconsideration. Parole practices and procedures are not uniform throughout the United States; some jurisdictions restrict the frequency or number of parole hearings quite significantly, as much or more than the restriction on sentence reduction motions set by the IRAA.[82] And appellant's argument that three chances are not enough to provide a meaningful opportunity to attain demonstrable maturity and rehabilitation is unpersuasive, given that the prisoner has twenty years in which to make progress before he can take the first of those chances, another five years in which to make further progress before he can take the second chance, and yet another five years before he can take his third chance. Moreover, the prisoner can wait to move for reduction of his sentence if he needs more time to make the showing of his rehabilitation and suitability for return to society. That a prisoner may fail to reform over the course of at least thirty years and may file motions that are premature does not mean he has been denied what the Eighth Amendment requires.[83]
For the foregoing reasons, we affirm the Superior Court's denial of appellant's § 23-110 motion for relief from his sentence, without prejudice to his right to seek a reduction of his sentence pursuant to the IRAA.
So ordered.

567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).

--- U.S. ----, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016).

567 U.S. at 465, 132 S.Ct. 2455 (internal quotation marks omitted).

Montgomery , 136 S.Ct. at 734 ; see also Miller , 567 U.S. at 479-80, 132 S.Ct. 2455.

Miller , 567 U.S. at 479, 132 S.Ct. 2455 (quoting Graham v. Florida , 560 U.S. 48, 75, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) ).

136 S.Ct. at 734.

Id. at 736-37.

Although the government argued otherwise in its briefs on appeal, it subsequently retracted its argument on that score at oral argument and in a letter pursuant to D.C. App. R. 28 (k).

See Malvo v. Mathena , 893 F.3d 265 (4th Cir. 2018), cert. granted , --- U.S. ----, 139 S.Ct. 1317, 203 L.Ed.2d 563, 2019 WL 1231751, 2019 U.S. LEXIS 1905 (U.S. 2019).

It appears appellant may be eligible for parole when he is 75 years of age. The appropriate measure of his expected life span is a matter of some dispute and uncertainty. In his appellate briefing, appellant cites government statistics indicating that a man of his age in the United States has an expected life span of 79 years of age. Other courts have found the proper method of measuring a juvenile offender's life expectancy for Eighth Amendment purposes to raise serious constitutional issues and to require a more searching and individualized factual inquiry. See, e.g. , Carter v. State , 461 Md. 295, 192 A.3d 695, 727 (2018) ; United States v. Grant , 887 F.3d 131, 149-150 (3d Cir. 2018). The inquiry was not pursued in the proceedings below, and the appellate briefs in this case do not explore the issues in depth. We need not resolve them in this case.

136 S.Ct. at 736.

D.C. Law 21-238, §§ 301-06, 63 D.C. Reg. 15312, 15319-22 (eff. Apr. 4, 2017).

See Williams v. United States , 655 A.2d 310 (D.C. 1995).

Under the indeterminate sentencing regime then in effect in the District of Columbia, see D.C. Code § 24-403 (2001), the judge sentenced appellant to terms of imprisonment of 20 years to life for each of the two remaining felony murder counts; 15 years to life for armed robbery; five to 15 years for possession of a firearm during a crime of violence ("PFCV"); 20 months to five years for conspiracy; one year for carrying a pistol without a license ("CPWL"); one year for attempted subornation of perjury; and one to three years for obstruction of justice. The penalty for felony murder included a mandatory minimum term of 20 years, see D.C. Code § 22-2404 (1981), and armed robbery and PFCV carried mandatory minimum terms of five years, see D.C. Code § 22-3202 (1981). The judge designated the sentences to run consecutively, except for the sentences for attempted subornation of perjury and obstruction of justice, which were to run concurrently. One third of appellant's one-year sentence for misdemeanor CPWL, i.e., four months, is included in the calculation of his aggregate minimum term pursuant to D.C. Code § 24-408 (2001).

The motion was filed before the Supreme Court decided Montgomery in January 2016 and before the IRAA became law in April 2017.

Although the judge considered appellant's youth, the record of appellant's sentencing confirms that he did not find appellant to be permanently incorrigible. Such a finding was not required under the law at the time.

After receiving appellant's pro se brief and the government's brief in response, this court appointed counsel for appellant and called for supplemental briefing "addressing whether the sentence violated the Eighth Amendment and any other issues counsel considers appropriate." Although, in the trial court, appellant did present other claims besides his Eighth Amendment claim (which the trial judge also rejected), he has not pursued those other claims on appeal. We consider them to be abandoned and do not address them. See Bardoff v. United States , 628 A.2d 86, 90 n.8 (D.C. 1993).

U.S. Const. amend. VIII.

543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).

Id. at 569, 125 S.Ct. 1183. The Court acknowledged that "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18." Id. at 574, 125 S.Ct. 1183. "[H]owever," the Court said, "a line must be drawn," and mainly because "[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood," the Court concluded that 18 is "the age at which the line for death eligibility ought to rest." Id.

Id. at 569-70, 125 S.Ct. 1183.

Id. at 573, 125 S.Ct. 1183.

Graham v. Florida , 560 U.S. 48, 69, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (quoting Harmelin v. Michigan , 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring) ).

Id. at 70, 130 S.Ct. 2011. As the Court explained,
[L]ife without parole sentences share some characteristics with death sentences that are shared by no other sentences. The State does not execute the offender sentenced to life without parole, but the sentence alters the offender's life by a forfeiture that is irrevocable. It deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency - the remote possibility of which does not mitigate the harshness of the sentence.... [T]his sentence 'means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the convict], he will remain in prison for the rest of his days.'
Id. at 69-70, 130 S.Ct. 2011 (citation omitted).

Id. at 72-74, 130 S.Ct. 2011.

Id. at 74, 130 S.Ct. 2011.

Id. at 75, 82, 130 S.Ct. 2011.

Miller v. Alabama , 567 U.S. 460, 473, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).

Id. at 479, 132 S.Ct. 2455.

Id. at 480, 132 S.Ct. 2455. In view of "children's diminished culpability and heightened capacity for change," the Court opined that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon" - "especially so because of the great difficulty [ ] noted in Roper and Graham of distinguishing at this early age between 'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.' " Id. at 479-80, 132 S.Ct. 2455 (quoting Roper , 543 U.S. at 573, 125 S.Ct. 1183, and Graham , 560 U.S. at 68, 130 S.Ct. 2011 ).

Montgomery v. Louisiana , --- U.S. ----, 136 S.Ct. 718, 734, 193 L.Ed.2d 599 (2016) (quoting Miller , 567 U.S. at 469, 132 S.Ct. 2455 (internal quotation marks omitted) ).

Id. at 735, 136 S.Ct. 718.

Id. at 734, 136 S.Ct. 718.

See, e.g. , Carter v. State , 461 Md. 295, 192 A.3d 695, 725-34 (2018) (holding, inter alia , that a lengthy term-of-years sentence can be a life sentence for purposes of the Eighth Amendment, and that, depending on the particular circumstances, this may be true when the sentence comprises consecutive multiple sentences for multiple crimes); United States v. Grant , 887 F.3d 131, 142 (3d Cir. 2018) ("A term-of-years sentence without parole that meets or exceeds the life expectancy of a juvenile offender who is still capable of reform is inherently disproportionate and therefore violates the Eighth Amendment under both Miller and Graham ."); State v. Ramos , 187 Wash.2d 420, 387 P.3d 650, 660 (2017) (holding that Miller applies to a "de facto" as well as a "literal" LWOP sentence, "[w]hether that sentence is for a single crime or is an aggregated sentence for multiple crimes").

See, e.g. , Malvo v. Mathena , 893 F.3d 265, 274 (4th Cir. 2018), cert. granted , --- U.S. ----, 139 S.Ct. 1317, 203 L.Ed.2d 563, 2019 WL 1231751, 2019 U.S. LEXIS 1905 (U.S. 2019) ("Montgomery ... confirmed that, even though imposing a life-without-parole sentence on a juvenile homicide offender pursuant to a mandatory penalty scheme necessarily violates the Eighth Amendment as construed in Miller , a sentencing judge also violates Miller 's rule any time it imposes a discretionary life-without-parole sentence on a juvenile homicide offender without first concluding that the offender's 'crimes reflect permanent incorrigibility,' as distinct from 'the transient immaturity of youth.' " (quoting Montgomery , 136 S.Ct. at 734 ) ); People v. Holman , 418 Ill.Dec. 889, 91 N.E.3d 849, 861 (Ill. 2017) ("The greater weight of authority has concluded that Miller and Montgomery send an unequivocal message: Life sentences, whether mandatory or discretionary, for juvenile defendants are disproportionate and violate the eighth amendment, unless the trial court considers youth and its attendant characteristics."); Veal v. State , 298 Ga. 691, 784 S.E.2d 403, 410 (2016) ("We might ... [have rejected] the merits of Appellant's Miller claim ... [because] Georgia's murder sentencing scheme ... does not under any circumstance mandate life without parole but gives the sentencing court discretion over the sentence to be imposed after consideration of all the circumstances in a given case, including the age of the offender and the mitigating qualities that accompany youth.... But then came Montgomery ." (internal quotation marks and citations omitted) ); State v. Riley , 315 Conn. 637, 110 A.3d 1205, 1213 (2015) (holding that "the dictates set forth in Miller may be violated even when the sentencing authority has discretion to impose a lesser sentence than life without parole if it fails to give due weight to evidence that Miller deemed constitutionally significant before determining that such a severe punishment is appropriate"); Aiken v. Byars , 410 S.C. 534, 765 S.E.2d 572, 577 (2014) ("Miller does more than ban mandatory life sentencing schemes for juveniles .... In our view, whether their sentence is mandatory or permissible, any juvenile offender who receives a sentence of life without the possibility of parole is entitled to the same constitutional protections afforded by the Eighth Amendment's guarantee against cruel and unusual punishment."); but see, e.g. , Jones v. Commonwealth , 293 Va. 29, 795 S.E.2d 705, 722 (2017) ("[T]he whole point of Miller was to preclude a sentencing scheme from imposing a mandatory life-without-parole sentence because doing so would eliminate the sentencing court's discretion to impose anything less than that. Only in those nondiscretionary sentencing schemes are the offender's 'youth and attendant characteristics' truly irrelevant."); Davis v. McCollum , 798 F.3d 1317, 1321 (10th Cir. 2015) ("Miller said nothing about non-mandatory life-without-parole sentencing schemes and thus cannot warrant granting relief from a life-without-parole sentence imposed under such a scheme.").

Miller , 567 U.S. at 465, 132 S.Ct. 2455 (emphasis in the original).

Id. at 479, 132 S.Ct. 2455 (quoting Graham , 560 U.S. at 75, 130 S.Ct. 2011 ).

Id. ; see also Graham , 560 U.S. at 82, 130 S.Ct. 2011 ("A State need not guarantee the [juvenile] offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term.").

Montgomery , 136 S.Ct. at 736.

Id. at 736-37.

Graham , 560 U.S. at 75, 130 S.Ct. 2011.

Montgomery , 136 S.Ct. at 735 (internal quotation marks and citation omitted) ). "When a new substantive rule of constitutional law is established," the Court explained, "this Court is careful to limit the scope of any attendant procedural requirement to avoid intruding more than necessary upon the States' sovereign administration of their criminal justice systems."

Id. at 736.

Id. (citing Wyo. Stat. Ann. § 6-10-301 (c) (2013) ).

D.C. Law 21-238, §§ 301-06, 63 D.C. Reg. 15312, 15319-22 (eff. Apr. 4, 2017). See D.C. Council Comm. on the Judiciary, Rep. on Bill 21-683, the "Comprehensive Youth Justice Amendment Act of 2016," at 11-14 (Oct. 5, 2016) (hereinafter referred to as the "Judiciary Committee Report"). The IRAA is Title III of this legislation.

D.C. Law 21-238, § 306 (a), codified as D.C. Code § 24-403.01 (c)(2) (2018 cum. supp.). The Judiciary Committee explained that the IRAA prohibits mandatory minimums because the rationale in "the Miller line of cases" for prohibiting mandatory LWOP sentences for juveniles tried as adults "applies equally to mandatory minimum sentences." Judiciary Committee Report at 12.

D.C. Code § 24-403.03 (2018 cum. supp.).

See id. (citing Fla. Stat. § 921.1402, Del. Code tit. 11, § 4204(A), and the Sentencing Reform and Corrections Act of 2016, S. 2123, 114th Cong.). At least one other State, North Dakota, has since enacted a statute similar to the IRAA. See N.D. Cent. Code § 12.1-32-13.1. A comparable bill is pending in Congress. See Sentencing Reform and Corrections Act of 2017, S. 1917, 115th Cong. § 208 (2017).

D.C. Code § 24-403.03 (a). The Sentencing Reform Amendment Act of 2000 abolished parole for all District of Columbia offenses committed on or after August 5, 2000, and replaced the former indeterminate sentencing regime under which appellant was sentenced with determinate sentencing, under which the defendant receives a definite term of imprisonment followed by a specified period of supervised release. See D.C. Code § 24-24-403.01 (2012 Repl.). The IRAA applies to defendants sentenced under either sentencing regime. See D.C. Code § 24-403.03 (a)(1)(A), (B).

The dissent contends that the IRAA sentence review procedure "was never intended" to afford a "Miller -compliant procedure for resentencing" juvenile defendants serving unconstitutional LWOP sentences. Post at 867. As a factual matter, we are not persuaded that this contention is correct. As we have noted, Montgomery held that juvenile offenders serving unconstitutional sentences are not necessarily entitled to resentencing; alternative relief may suffice, and the Judiciary Committee Report makes explicit that the IRAA sentence review procedure is intended to implement the Supreme Court's holding "that juveniles given life sentences must be given 'some realistic opportunity to obtain release' so that a juvenile defendant can 'demonstrate that he is fit to rejoin society.' " Judiciary Committee Report at 14 (quoting Graham , 560 U.S. at 79-82, 130 S.Ct. 2011 ). In proposing this review procedure, moreover, the Committee noted that the Supreme Court had "left it to the states to 'explore the means and mechanisms for compliance' " with the Eighth Amendment and to determine "[w]hat a 'realistic opportunity to obtain release' should look like." Id. (quoting Graham , 560 U.S. at 75, 130 S.Ct. 2011 ).
More important, however, what matters is not whether the Council specifically intended the IRAA sentence review procedure to remedy unconstitutional LWOP sentences, but whether this procedure actually does remedy them. For the reasons we set forth in this opinion, we are convinced that it does, just as if the Council had provided instead for across-the-board parole eligibility after twenty years for juvenile offenders serving LWOP sentences.

§ 24-403.03 (b)(1), (2).

§ 24-403.03 (b)(2).

§ 24-403.03 (a)(2).

See D.C. Code § 24-404 (a) (authorizing release on parole if the Parole Commission finds "there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his or her release is not incompatible with the welfare of society, and that he or she has served the minimum sentence imposed or the prescribed portion of his or her sentence, as the case may be").

Id. at § 24-403.03 (c)(1), (5), (10).

§ 24-403.03 (c). The court also is directed to consider information submitted by the United States Attorney and by (or on behalf of) the victim of the offense for which the defendant is imprisoned, and "[a]ny other information the court deems relevant to its decision." Id.

§ 24-403.03 (b)(4).

Cook v. United States , 932 A.2d 506, 507 (D.C. 2007).

§ 24-403.03 (e). Of course, the new sentence must conform to the requirements of the Eighth Amendment, including those articulated in Graham , Miller , and Montgomery .

§ 24-403.03 (d).

Montgomery , 136 S.Ct. at 736.

Accord Carter v. State , 461 Md. 295, 192 A.3d 695, 708 (2018) ("There is no constitutional requirement that a state have a parole system per se , so long as the state provides a meaningful opportunity for release based on demonstrated maturity and rehabilitation."). In Carter , the Maryland Court of Appeals upheld the constitutionality of life sentences for crimes committed by juveniles under a system in which the ultimate decision to grant parole is made not by the State's Parole Commission, but by the Governor. This procedure satisfied the requirements of the Eighth Amendment because, by Executive Order having the force of law, the Governor must take into consideration the factors specific to juvenile offenders identified in the Supreme Court's LWOP decisions. Id. at 723-24.

See Montgomery , 136 S.Ct. at 735 ; see also Graham , 560 U.S. at 75, 130 S.Ct. 2011. While the District of Columbia is not a State, there is no reason it should not have the same flexibility as the States have to develop remedies for constitutional violations.

See footnote 48, supra . The dissent implies that these States (Florida, Delaware, and North Dakota) deem the IRAA-like statutes inadequate to meet the requirements of the Eighth Amendment. Post at 878 n.31. This is not so, as we proceed to show in discussing the Florida law. We focus on Florida because that State's highest court has considered the constitutional adequacy of its IRAA counterpart. The Supreme Courts in Delaware and North Dakota have not yet had occasion to do so; in Garcia v. State , 903 N.W.2d 503 (N.D. 2017), the North Dakota Supreme Court noted only that the retroactivity of its State's statute (which had just been enacted in 2017) was an open question. Id. at 513.

Horsley v. State , 160 So.3d 393, 406 (Fla. 2015). The Court remanded the case for Horsley to be resentenced, not because it found the judicial review procedure inadequate to remedy the lack of an opportunity for early release, but to address other defects in his original sentencing and properly determine whether his maximum sentence should remain life in prison or instead be a fixed term of no less than 40 years. Id. at 408. "Either way," the Court stated, Horsley "will receive a subsequent judicial review of his sentence after twenty-five years" pursuant to Fla. Stat. § 921.1402. Id. Thus, the constitutionality of Horsley's new sentence depended on the Court's conclusion that the statutory judicial review procedure fulfills the requirements of the Eighth Amendment with respect to providing an opportunity for early release. See also Nelms v. State , 263 So.3d 88, 90-91 (Fla. Dist. Ct. App. 2019) ("Nelms was sentenced to life in prison with judicial review after twenty-five years .... Because such a sentence offers an opportunity for release and cannot be found to be tantamount to a sentence of life in prison without the possibility of parole, Nelms' sentence does not violate Graham , Miller , and similar cases.").

The dissent asserts that Florida and other States do not rely on their IRAA-type statutes to provide a retroactive remedy in lieu of resentencing for defendants who have already begun serving unconstitutional LWOP sentences. Post at 870-81. To the extent that may be so, it is immaterial. The important point is the equivalence for Eighth Amendment purposes of IRAA-type judicial review to parole review. The dissent concedes, as it must, that a State may choose to cure unconstitutional LWOP sentences retroactively without resentencing by making parole available; the essential equivalency of parole and IRAA review (which the dissent fails to rebut) means States may effect that cure by making IRAA-type judicial review available instead of parole. (If anything, as we discuss infra , the IRAA procedures actually are superior to parole procedures in ways that are critically important to fulfilling the Eighth Amendment's requirements.)

58 Cal.4th 1354, 171 Cal.Rptr.3d 421, 324 P.3d 245 (2014).

Cal. Penal Code § 1170 (d)(2) (West 2012) (amended 2018). The statute provides that a juvenile offender sentenced to LWOP may, after serving at least fifteen years of that sentence, submit to the sentencing court a petition for recall of the sentence and resentencing.

See Gutierrez , 171 Cal.Rptr.3d 421, 324 P.3d at 266-67. For present purposes, we need not address whether Gutierrez is distinguishable because of the unconstitutional presumption in favor of life without parole embodied in California law. But this was a significant feature in the Court's determination, for as it explained, "for juvenile offenders such as Gutierrez, the potential for relief under [the recall and resentencing statute] does not eliminate the serious constitutional doubts arising from a presumption in favor of life without parole ... because the same questionable presumption would apply at resentencing." Id. , 171 Cal.Rptr.3d 421, 324 P.3d at 266. In contrast, there is no such presumption in IRAA sentence reduction proceedings; the presumption under the IRAA is to the contrary. See footnote 73, infra .

For example, the Gutierrez court rejected the concept of providing "an after-the-fact corrective" to an unconstitutional LWOP sentence, reasoning that "it is doubtful that the potential to recall a life without parole sentence based on a future demonstration of rehabilitation can make such a sentence any more valid when it was imposed." Id., 171 Cal.Rptr.3d 421, 324 P.3d at 267. But as discussed above, Montgomery held that providing such an opportunity does what is necessary to remedy the initial unconstitutionality of the sentence by removing its only objectionable feature.

2 Cal.5th 1040, 216 Cal.Rptr.3d 876, 393 P.3d 364 (2017). In the interim, the Court decided People v. Franklin , 63 Cal.4th 261, 202 Cal.Rptr.3d 496, 370 P.3d 1053 (2016), in which it held, consistent with Montgomery , that a new statute entitling a juvenile offender serving an LWOP sentence to a parole hearing after 25 years "rendered moot any infirmity" in the LWOP sentence (and thus remedied the presumed constitutional violation without the need for resentencing). Id. , 202 Cal.Rptr.3d 496, 370 P.3d at 1060.

Id. , 216 Cal.Rptr.3d 876, 393 P.3d at 372.

D.C. Code § 24-403.03 (c)(10) (emphasis added). Ignoring this explicit statutory language, as well as the IRAA's total ban on the imposition of LWOP sentences on juvenile offenders, see id. § 24-403.01 (c)(2), the dissent inexplicably asserts that "[b]y requiring the movant to serve twenty years of his sentence before he may seek review," the IRAA "assumes the legality of the sentence the movant asks to be reviewed." Post at 866. If anything, the IRAA assumes that an LWOP sentence for a juvenile offender is presumptively unconstitutional. Furthermore, the dissent's fallacious assertion would apply equally (if not more so) to a remedial statute providing for a parole hearing, but requiring the offender to serve twenty years before being entitled to it - the very kind of relief that Montgomery held (and the dissent concedes) would cure a Miller violation.

See Swarthout v. Cooke , 562 U.S. 216, 220, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011) (holding that the Constitution requires no more in a parole hearing than "an opportunity to be heard" and "a statement of the reasons why parole was denied[,]" and rejecting a "some evidence" requirement as a component of due process applicable to parole denials); see also Greenholtz v. Inmates of Neb. Penal & Corr. Complex , 442 U.S. 1, 14, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ("Procedures designed to elicit specific facts ... are not necessarily appropriate to a Nebraska parole determination. Merely because a statutory expectation exists cannot mean that in addition to the full panoply of due process required to convict and confine there must also be repeated, adversary hearings in order to continue the confinement.").

Whether to permit the parties to present evidence at the hearing on an IRAA motion is left to the judge's discretion, see D.C. Code § 23-403.03 (b)(2). If there is no dispute or uncertainty about the material facts, or if the parties are unable to proffer probative evidence, an evidentiary hearing is presumably unnecessary. But an evidentiary hearing may be necessary for the judge to render a decision based on reliable and complete information. Moreover, since the defendant bears the burden under Montgomery of demonstrating his maturation and rehabilitation, he must be given a fair and adequate opportunity to do so by presenting probative evidence and challenging opposing evidence bearing on the disputed or unresolved issues before the judge. See Grant v. United States , 509 A.2d 1147, 1155-56 (D.C. 1986).

Decisions to deny parole are typically highly discretionary and appellate review of those decisions is correspondingly quite limited. See e.g. , Greenholtz , 442 U.S. at 9-10, 99 S.Ct. 2100 (noting that parole release decisions depend on a "discretionary assessment of a multiplicity of imponderables," "may be made for a variety of reasons and often [involve] no more than informed predictions" (internal citations and quotation marks omitted) ); McRae v. Hyman , 667 A.2d 1356, 1361 (D.C. 1995) (explaining that "because the statute and regulations vest in the Board substantial discretion in granting or denying parole[,] they lack the mandatory character which the Supreme Court has found essential to a claim that a regime of parole gives rise to a liberty interest" (internal punctuation omitted) ); Bogan v. District of Columbia Bd. of Parole , 749 A.2d 127, 129 (D.C. 2000) ("We do not review the merits of the Board's decision in denying parole, and are limited to a review of the procedures used by the Board in reaching its decision." (quoting Smith v. Quick , 680 A.2d 396, 398 (D.C. 1996) ).

Reply Brief at 15.

As discussed above, decisions granting or denying parole may be and typically are highly discretionary and imprecise; the Constitution does not require them to be otherwise. See footnote 76, supra .

Reply Brief at 18-19.

See generally Johnson v. United States , 398 A.2d 354, 363-67 (1979).

Saunders v. United States , 975 A.2d 165, 167 (D.C. 2009) (internal quotation marks and citation omitted).

See, e.g. , Van Ackeren v. Neb. Bd. of Parole , 251 Neb. 477, 558 N.W.2d 48, 51-52 (1997) (prisoner not entitled to annual parole hearing after board's denial of parole is final); Mont. Code § 46-23-201(5) (requiring prisoners convicted of a sexual or violent offense to wait six years after being denied parole before petitioning for it again); 37 Tex. Admin. Code § 145.12(2) (inmates serving life sentences required to wait ten years after being denied parole before next parole consideration); Utah Admin. Code R. R671-316(3) (same).

In any event, the lawfulness of the IRAA's three-motion limit is a hypothetical question not presented in this appeal, and it does not affect our decision. If this court were to conclude, in an appeal actually presenting the issue, that the statutory preclusion of a fourth motion is incompatible with the Eighth Amendment, the preclusion provision would be severed and its invalidity would not affect the validity of the other provisions or applications of the statute. See D.C. Code § 45-201 (2012 Repl.).